Filed 1/27/25  P. v. Pettaway CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B333436 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A957997) |
| v. | |
| UNDRAE PETTAWAY, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Charlaine F. Olmedo, Judge.  Affirmed.

Nancy J. King, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Michael C. Keller and Blake Armstrong, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Defendant and appellant Undrae Pettaway challenges the trial court's denial of his petition for resentencing under Penal Code section 1172.6.[1]  A jury convicted Pettaway of one count of first degree murder (§ 187, subd. (a)) with a special circumstance finding of killing for financial gain (§ 190.2, subd. (a)(1)), along with one count of conspiracy to commit murder (former § 182, subd. (1))[2] for his role in the 1987 killing of Nicklaus Rondeau.  The trial court found that Pettaway had failed to make a prima facie case of eligibility for resentencing.  The court reasoned that the instruction on the financial-gain special circumstance required the jury to find "that [Pettaway] harbored express malice [and acted] with the intent to kill."  Thus, despite subsequent changes in the law, Pettaway remained guilty of murder.

Pettaway argues this was error.  He acknowledges the instructions required the jury to find he harbored an intent to kill his victim in order to convict him, but claims that the instructions did not require the jury to find the other elements necessary for murder on a still-valid theory.  We disagree and

_____

[1] At the time Pettaway filed his petition, the applicable statute was found at Penal Code section 1170.95.  Assembly Bill No. 200 (2021-2022 Reg. Sess.) has since renumbered section 1170.95 as section 1172.6.  (See Stats. 2022, ch. 58, § 10.)  For clarity, we refer to the current citation at section 1172.6 throughout.  Unless otherwise specified, subsequent statutory references are to the Penal Code.

[2] After Pettaway was charged, this provision was renumbered as section 182, subdivision (a)(1).  (See Stats. 1989, ch. 897, § 15.)

affirm the trial court's finding that Pettaway is not entitled to resentencing as a matter of law.

## PRIOR PROCEEDINGS

The People charged Pettaway by information with one count of murder (§ 187, subd. (a)) and one count of conspiracy to commit murder (former § 182, subd. (1)), and alleged as a special circumstance that Pettaway committed the murder for financial gain (§ 190.2, subd. (a)(1)).

Because courts may not engage in factfinding at the prima facie stage (*People v. Lewis* (2021) 11 Cal.5th 952, 972), we do not describe the facts of the case in detail. To provide background, we recount the overt acts the People alleged in the 1992 information as the basis of the conspiracy:

"On June 9, 1987, the defendants[,] Undrae Pettaway and Kenneth Brown Gibbs[,] applied for two life insurance policies naming the victim[,] Nicklaus Rondeau[,] as the insured.

"On [the first] insurance policy . . . [,] the named beneficiary was Robert Leroy Thomas. Robert Leroy Thomas was a name used by Undrae Pettaway as an alias. On [the second] life insurance policy . . . [,] Undrae Pettaway named his wife, Robby Pettaway, as the beneficiary.

"On June 10, 1987, Undrae Pettaway and Kenneth Brown Gibbs[] drove from Harris County, Texas to Los Angeles, California for the purpose[] of killing Nicklaus Rondeau.

"On June 12, 1987, Undrae Pettaway and Kenneth Brown Gibbs[] drove to 237 West 51st Street, Los Angeles, California. Kenneth Brown Gibbs exited the vehicle and killed the victim[,] Nicklaus Rondeau.

"On June 12, 1987, Undrae Pettaway picked up Kenneth Brown Gibbs immediately after the shooting and drove to San

3

Bernardino and then back to Houston, Texas." (Headings removed and capitalization omitted.)

The jury convicted Pettaway on both counts and found the special circumstance allegation true. The trial court sentenced him to life without the possibility of parole.

In 2018, the Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437), which eliminated or restricted certain forms of murder liability and created a process by which defendants previously convicted of murder under a now-invalid theory could petition for resentencing. (See § 1172.6.) In September 2021, Pettaway filed a petition for resentencing on both counts. After appointing counsel and obtaining briefing from both sides, the trial court denied the petition. It found that Pettaway had failed to make a prima facie case for relief because the jury instructions showed that, in finding the special circumstance true, the jury necessarily found that he acted with the intent to kill, and he thus remained guilty of murder under the law as amended.

## DISCUSSION

## A. Standard of Review and Statutory Background

We review de novo a trial court's determination that the defendant has failed to make a prima facie case for relief under section 1172.6. (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1251.)

Section 1172.6 allows certain defendants convicted of murder, attempted murder, or voluntary manslaughter to petition the trial court for their convictions to be vacated and to be resentenced. To be eligible for relief under the statute, it must be the case that "[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to [s]ection

4

188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(3).) These changes to the law, enacted as part of Senate Bill 1437, amended section 188 to provide that, "Except as stated in subdivision (e) of [s]ection 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) The effect of this amendment was to abolish the natural and probable consequences doctrine as a basis of liability for murder. (*People v. Gentile* (2020) 10 Cal.5th 830, 847-848.) Prior to the enactment of Senate Bill 1437, a defendant could be convicted of murder under this doctrine simply by acting as an accomplice in an offense that foreseeably resulted in the commission of a murder, even if the defendant did not share the mens rea of the killer. (*People v. Curiel* (2023) 15 Cal.5th 433, 449.)

In addition to abolishing the natural and probable consequences doctrine, Senate Bill 1437 also amended section 189 to restrict the application of the felony-murder doctrine, requiring greater proof of the defendant's personal culpability for the killing. (See *People v. Strong* (2022) 13 Cal.5th 698, 707-708.) To convict a defendant of felony murder under the new law, the prosecution must prove that the defendant either was the actual killer (§ 189, subd. (e)(1)); acted with the intent to kill in aiding, abetting, encouraging, or soliciting the actual killer (*id.*, subd. (e)(2)); or "was a major participant in the underlying felony and acted with reckless indifference to human life" (*id.*, subd. (e)(3)).

To obtain relief under section 1172.6, a petitioner must first make a prima facie case for eligibility. (See *id.*, subd. (c).) "[T]he prima facie inquiry under [section 1172.6,] subdivision (c) is limited," and the trial court must " ' "take[] [the] petitioner's

5

factual allegations as true" ' " and "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.]" (*People v. Lewis*, *supra*, 11 Cal.5th at pp. 971, 972.) The court may deny a defendant's petition if the record refutes the defendant's allegation that he is eligible for resentencing (*id.* at p. 971), but this does not occur "unless the record conclusively establishes every element of the offense." (*People v. Curiel*, *supra*, 15 Cal.5th at p. 463.)

If the petition survives the prima facie stage, the court must hold an evidentiary hearing at which the People bear the burden "to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by" Senate Bill 1437. (§ 1172.6, subd. (d)(3).) If the People cannot carry this burden, the court must vacate the murder conviction and then resentence the defendant on any remaining charges. (*Id.*, subd. (d)(1).)

## B. Pettaway Has Failed to Make a Prima Facie Case Because the Record Shows Unequivocally that He Was Convicted on a Still-valid Theory

At the prima facie stage, "the court may consider jury instructions" (*People v. Flores* (2023) 96 Cal.App.5th 1164, 1170) as part of its review of the record of conviction. If this review reveals the jury was not instructed on any theory of liability affected by Senate Bill 1437, the court may correctly deny resentencing without holding an evidentiary hearing. (E.g., *People v. Love* (Jan. 13, 2025, B331017) ___ Cal.App.5th ___, ___ [2025 WL 97825 *6] [the defendant failed to establish a prima facie case when the jury instructions "foreclose[d] the possibility that [the defendant] was convicted under any now-invalid theory"]); *People v. Coley* (2022) 77 Cal.App.5th 539, 548.) After

6

all, "if the jury did not receive an instruction on the natural and probable consequences doctrine, the jury could not have convicted the defendant on that basis." (*People v. Offley* (2020) 48 Cal.App.5th 588, 599.)

In this case, Pettaway's jury received no instruction on "felony murder or murder under the natural and probable consequences doctrine or [any] other theory under which malice is imputed to a person based solely on that person's participation in a crime." (§ 1172.6, subd. (a).) Instead, the jury was instructed on murder in an instruction based on CALJIC No. 8.10, as follows: "Every person who unlawfully kills a human being with malice aforethought, is guilty of the crime of murder in violation of [s]ection 187 . . . . [¶] In order to prove such crime, each of the following elements must be proved:

"1.    A human being was killed.
"2.    The killing was unlawful, and
"3.    The killing was done with malice aforethought."

The jury also received an instruction on malice aforethought based on CALJIC No. 8.11: "Malice is express when there is manifested an intention unlawfully to kill a human being." The jury did not receive an instruction on implied malice.

The jury also received an instruction based on CALJIC No. 3.00 stating, "The persons concerned in the commission or attempted commission of a crime who are regarded by law as principals in the crime thus committed or attempted and equally guilty thereof include:

"1.    Those who directly and actively commit or attempt to commit the act constituting the crime, or

"2.    Those who aid and abet the commission or attempted commission of the crime."

Finally, the jury was instructed on aiding and abetting liability based on CALJIC No. 3.01: "A person aids and abets the commission or attempted commission of a crime when he or she,

"(1)   with knowledge of the unlawful purpose of the perpetrator and

"(2)   with the intent or purpose of committing, encouraging, or facilitating the commission of the crime, by act or advice aids, promotes, encourages or instigates the commission of the crime."

The instructions quoted above provided the only basis for convicting Pettaway of murder. We have reviewed the instructions and found no reference to felony murder, the natural and probable consequences doctrine, or any other theory of imputed malice, and Pettaway does not claim the instructions contained in the record are incomplete. The language of the CALJIC pattern instructions has changed slightly in the decades since Pettaway's trial, but the underlying principles have not. Direct aiding and abetting remains a valid basis for a murder conviction under current law. (*People v. Gentile*, *supra*, 10 Cal.5th at p. 848.)

In his appellate briefing, Pettaway ignores the jury instructions quoted above and instead focuses on other instructions regarding the charge of conspiracy to murder[3] and

---

[3] Pettaway states that he "is not challenging the conspiracy conviction" itself but rather arguing that the conspiracy conviction does not show he is guilty of murder under a valid theory. Section 1172.6 "does not permit a challenge to a conviction for conspiracy to murder." (*People v. Whitson* (2022) 79 Cal.App.5th 22, 35; accord, *People v. Lovejoy* (2024) 101

the financial-gain special circumstance.  He argues that these instructions "provided a path for conviction" on the murder charge on a theory of imputed[4] malice "with no finding of an actus reus to support the conviction pursuant to current law."

Pettaway's argument relies on a misapplication of *Curiel,* a case in which the jury was instructed on both the natural and probable consequences doctrine and direct aiding and abetting. (*People v. Curiel, supra,* 15 Cal.5th at p. 446.)  The People argued Curiel was ineligible for resentencing because the jury found true a gang-murder special circumstance allegation that required the jury to find he acted with the intent to kill.  The Supreme Court rejected this argument because an intent to kill "standing alone is insufficient to establish the requisite mens rea for aiding and abetting murder.  The essence of aiding and abetting is involvement in the crime of another. . . .  Although intent to kill is certainly blameworthy, it is insufficient standing alone to render a person culpable for another's acts.  The aider and abettor must know the direct perpetrator intends to commit the murder or life-endangering act and intend to aid the direct perpetrator in its commission.  It is this mental relationship to the perpetrator's acts that confers liability on the aider and abettor." (*Id.* at p. 468; accord, *In re Lopez* (2023) 14 Cal.5th 562, 585-587.)  Pettaway argues that in the same way, his conviction

_____

Cal.App.5th 860, 870; *People v. Medrano* (2021) 68 Cal.App.5th 177, 182-184.)

[4] Pettaway's brief reads "implied" in place of "imputed," but this must be a typo.  As noted above, the jury received no instructions on implied malice, and Senate Bill 1437 did not bar convictions for murder based on implied malice. (*People v. Carr* (2023) 90 Cal.App.5th 136, 144.)

9

of conspiracy to commit murder and the jury's finding of a financial-gain special circumstance, both of which required proof of intent to kill (*People v. Fayed* (2020) 9 Cal.5th 147, 201-202 [special circumstance]; *People v. Kopp* (2019) 38 Cal.App.5th 47, 73 [conspiracy to murder], review granted Nov. 13, 2019, S257844), do not show that he is guilty of murder under current law.

*Curiel* is beside the point here. The defendant's petition in that case could not be dismissed at the prima facie stage because the court could not rule out the possibility that this was one of a " 'very small set of cases' " (*People v. Curiel*, *supra*, 15 Cal.5th at p. 470, quoting *People v. Gentile*, *supra*, 10 Cal.5th at p. 850) in which "a defendant is liable for murder under the natural and probable consequences doctrine, and acts with malice aforethought, but is *not* liable as a direct aider and abettor." (*Curiel*, *supra*, at p. 470.) That possibility does not exist here because, unlike in *Curiel*, Pettaway's jury was not instructed on the natural and probable consequences doctrine. That comes as no surprise. The prosecution of Pettaway was directed solely at proving he intended to kill Rondeau. "First degree murder was the object of the conspiracy, not the natural and probable consequence of an act committed to further [some other] object . . . ." (*People v. Medrano*, *supra*, 68 Cal.App.5th at p. 184.)

The instructions for murder given to Pettaway's jury and their resulting verdict "foreclose . . . *as a matter of law*" the possibility that his conviction was based on a theory made invalid by Senate Bill 1437, and " 'establish conclusively that the defendant is ineligible for relief.' " (*People v. Curiel*, *supra*, 15 Cal.5th at p. 470, quoting *People v. Strong*, *supra*, 13 Cal.5th at

10

p. 708.)  The trial court correctly found Pettaway failed to make a prima facie case for resentencing.

## DISPOSITION

The trial court's order is affirmed.

NOT TO BE PUBLISHED


WEINGART, J.


We concur:


ROTHSCHILD, P. J.


M. KIM, J.

11